UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JANE DOE, )
)
Plaintiff, )
)
v. ) Civil Case No. 09-2349 (RJL)
)
ROBERT M. GATES, )
in his official capacity as )
Secretary of Defense, )
)
Defendant. )

MEMORANDUM OPINION
(December 14, 2011) [#24]

Plaintiff Jane Doe ("plaintiff" or "Doe") brought an action against Robert M. Gates ("defendant" or "Gates"), former Secretary of Defense, alleging the following violations of the Rehabilitation Act of 1973: (1) unlawful disability discrimination based on disparate treatment; (2) unlawful disability discrimination based on disparate impact; (3) failure to make reasonable accommodations; (4) discrimination *per se*; (5) unlawful use of confidential medical information; (6) impermissible medical inquiry; and (7) failure to implement policies appropriately. Defendant has moved to dismiss plaintiff's complaint, or in the alternative, moved for summary judgment. After due consideration of the law and pleadings, defendant's Motion to Dismiss is GRANTED.

BACKGROUND

Plaintiff is a civilian employee of the Defense Intelligence Agency ("DIA"), a combat support agency within the United States Department of Defense ("DOD"). Compl. ¶¶ 3-5. The United States Central Command ("CENTCOM") is a theater-level

1

Unified Combatant Command unit that is also part of the DOD. *Id.* ¶ 4. Defendant was the Secretary of Defense at the DOD at the time of the alleged discrimination. *Id.*

In or around 2003, while employed by the DIA, plaintiff was diagnosed with bipolar affective mood disorder. *Id.* ¶ 7. The DIA determined, however, that plaintiff's diagnosis did not disqualify her from her employment or security clearance. *Id.* ¶ 11.

On three occasions between 2005 and 2008, the DIA permitted plaintiff to deploy abroad, specifically to Turkey in 2005, to Canada in 2006, and to Egypt in 2008. *Id.* ¶ 16; Ex. 3 to Def.'s Mot. to Dismiss ("Def.'s Mot."), Mar. 15, 2011. In or around March 2009, the DIA informed plaintiff that she would be placed on temporary duty deployment ("TDY") to Dubai, United Arab Emirates, beginning in April 2009 for a period of less than thirty days, to attend a conference in connection with her employment as a civilian employee with DIA. Compl. ¶¶ 18-19.

According to DIA procedure, on or about April 1, 2009, plaintiff submitted a pre-deployment evaluation to the Defense Logistics Operation Center ("DLOC"), a division of the DIA. *Id.* ¶ 21. In connection with the evaluation, plaintiff submitted a letter dated April 6, 2009 from her treating psychiatrist. *Id.* ¶ 23.

Despite having previously permitted plaintiff to deploy abroad on three occasions, on April 7, 2009, DLOC determined that plaintiff was "not deployable" for purposes of the Dubai TDY based on her bipolar affective mood disorder. *Id.* ¶ 24. DLOC based its decision on CENTCOM policy—CENTCOM Mod 9—which provided that "[p]sychotic

and bipolar disorders are disqualifying for deployment."[1] *Id.* ¶¶ 26-27. On April 14, 2009, plaintiff submitted a Medical Waiver Request seeking waiver from the DLOC's finding based on her individual condition and the nature of the deployment. *Id.* ¶ 32. The DIA denied her waiver request. *Id.* ¶ 34.

On July 13, 2009, plaintiff filed a formal Equal Employment Opportunity ("EEO") complaint with the DIA. *Id.* ¶ 42. Plaintiff proposed four changes to the CENTCOM Mod 9 as a "reasonable accommodation." *Id.* ¶ 35. Plaintiff proposed that the DIA "[1] distinguish between CENTCOM countries based on level of threat; [2] engage in a country-by-country analysis based on available medical resources; [3] categorize different types of deployment; or [4] impose fewer conditions that automatically render an individual 'not deployable' and permit, instead, more individualized inquiry into an individual's fitness for both duty and deployment." *Id.* Plaintiff also suggested that she "would accept shorter deployments; and/or pay her own medical expenses, if needed, in deployed locations." *Id.* ¶ 36. The DIA, relying on CENTCOM Mod 9, dismissed plaintiff's formal EEO complaint on September 11, 2009. *Id.* ¶ 43. On or about early October 2009, plaintiff was promoted. *Id.* ¶¶ 5, 45.

Plaintiff filed this lawsuit on December 10, 2009, alleging: (1) unlawful disability discrimination based on disparate treatment; (2) unlawful disability discrimination based on disparate impact; (3) failure to make reasonable accommodations; (4) discrimination

---

[1] The parties agree that the DLOC incorrectly applied CENTCOM Mod 9 as the governing policy. Compl. ¶ 26; Def.'s Mot. at 2. CENTCOM Mod 9 applies only to deployments for a period of thirty days or greater, and the Dubai TDY was for a period of less than thirty days. *See* CENTCOM Mod 9, Ex. 1 to Def.'s Mot.

3

*per se*; (5) unlawful use of confidential medical information; (6) impermissible medical inquiry; and (7) failure to implement policies appropriately. *See* Compl. [Dkt. No. 3]. As of February 5, 2010, however, requests for temporary duty CENTCOM deployments are subject to DOD Instruction 6490.07, "Deployment-Limiting Medical Conditions for Service Members and DOD Civilian Employees." *See* Ex. 8 to Def.'s Mot.; Def.'s Mot. at 7. DOD Instruction 6490.07 distinguishes "contingency deployments" from "deployments": contingency deployments are limited to overseas travel "over 30 days in duration, and in a location with medical support from only non-fixed (temporary) military medical treatment facilities," whereas deployments have no temporal or medical threshold requirement. Ex. 8 to Def.'s Mot ¶¶ 3(b), (c). Pursuant to this Instruction, psychotic or bipolar disorders or both are listed as "Medical Conditions Usually Precluding Contingency Deployment." *Id.*, Encl. 3 § h. Further, when a civilian employee who is subject to the Rehabilitation Act has a medical condition that could be disqualifying for travel and makes a waiver request, the Instruction mandates an individualized assessment. *Id.* ¶¶ b(5), c.

On March 15, 2011, defendant filed a motion to dismiss plaintiff's complaint, or in the alternative, for summary judgment. For the following reasons, defendant's motion is GRANTED.

## STANDARD OF REVIEW

A court may dismiss a complaint or any portion of it for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, however, the Court may only consider "the facts alleged in the complaint, any

4

documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). To survive a motion to dismiss, a complainant must "plead [ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, ---U.S.---, 129 S. Ct. 1937, 1949 (2009). In evaluating a Rule 12(b)(6) motion, the Court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (internal quotation marks omitted). However, factual allegations, even though assumed to be true, must still "be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, the Court "need not accept inferences drawn by plaintiff[] if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## LEGAL ANALYSIS

### I. *Disparate Treatment Claim*

Plaintiff contends that defendant violated the Rehabilitation Act through unlawful disability discrimination based on disparate treatment. *See* Complaint ("Compl.") ¶¶ 53-60. Specifically, plaintiff contends that defendant discriminated against her when the DIA denied her the opportunity to attend the Dubai TDY based on her diagnosed bipolar disorder. *Id.* To establish a prima facie case of disability discrimination under a disparate treatment theory, "a plaintiff must show: (1) that she was an individual who

5

had a disability within the meaning of the Rehabilitation Act; (2) that she was qualified for the position; and (3) that she suffered an adverse employment action because of her disability." *Duncan v. Harvey*, 479 F. Supp. 2d 125, 129-30 (D.D.C. 2007) (citing *Duncan v. WMATA*, 240 F.3d 1110, 1114 (D.C. Cir. 2001) (en banc). For purposes of its motion to dismiss, defendant does not dispute that plaintiff has satisfied the first two elements. Def.'s Mot. at 12. However, defendant contends that plaintiff has not suffered an adverse employment action because of her disability. *Id.* I agree.

Although adverse employment actions "are not confined to hirings, firings, promotions, or other discrete incidents," *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006), to establish an adverse employment action in a discrimination case, "a plaintiff must show 'materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment such that a trier of fact could find *objectively tangible harm*.'"[2] *Nurriddin v. Bolden* ("*Nurriddin II*"), 674 F. Supp. 2d 64 89-90 (D.D.C. 2009) (quoting *Nurriddin v. Goldin* ("*Nurriddin I*"), 382 F. Supp. 2d 79, 103 (D.D.C. 2005)) (emphasis in original). "[T]he denial of a single training or travel opportunity does not constitute an adverse employment action unless the plaintiff can 'tie the alleged discriminatory employment action to some actual, tangible adverse employment consequence.'" *Edwards v. U.S. EPA*, 456 F. Supp. 2d 72, 85 (D.D.C. 2006) (quoting *Nurriddin I*, 382 F. Supp. 2d at 102); *see Campbell v. Nat'l Educ. Ass'n*,

---

[2] With respect to claims of disparate treatment, our Circuit applies the same standards for Title VII claims as it does for Rehabilitation Act claims. *See Fields of Office of Eddie Bernice Johnson*, 459 F.3d 1, 15 n.24 (D.C. Cir. 2006); *Taylor v. Rice*, 451 F.3d 898, 911 (D.C. Cir. 2006).

No. 99-7122, 2000 WL 1584589, at *4 (D.C. Cir. Oct. 3, 2000) (unpublished) (holding that the defendant's "denial of projects and/or conferences that seemed attractive to" the plaintiffs did not constitute an adverse employment action). Thus, "to be adverse, the denial of a travel or training opportunity must have a discernible, as opposed to a speculative, effect on the terms, conditions, or privileges of one's employment." *Edwards*, 456 F. Supp. 2d at 861; *see also Nurriddin I*, 382 F. Supp. 2d at 102 ("It is not enough for plaintiff to say that because of denial of travel his general stature at [work] has suffered.").

Here, plaintiff merely alleges that the denial of travel *could* affect further promotions and her professional development. *See* Compl. ¶¶ 46, 51. Such alleged harm is not "actual" or "tangible." It is speculative. *See Edwards*, 456 F. Supp. 2d at 85, 86 ("[W]here what an employee alleges is that he was denied the chance to pursue, at the employer's expense, potentially fruitful opportunities, he has not pointed to any concrete changes in the terms, conditions, or privileges of his current or identifiable future employment."). Further, although plaintiff also alleges that the denial of travel "has and will have an adverse impact on [her] performance and appraisal," she has not pointed to any adverse appraisals and even concedes that she subsequently was promoted on or around October 2009. *Id.* ¶¶ 5, 45, 46, 52. Thus, plaintiff has failed to point to any discernible effect on the terms, conditions, or privileges of her present *or* future employment. As such, she has not alleged facts sufficient to claim an adverse

7

employment action, and therefore her claim for disparate treatment (Count I) must be dismissed.³

## *II. Reasonable Accommodation Claim*

Plaintiff further contends that defendant violated the Rehabilitation Act by failing to make the reasonable accommodation proposed by her in the form of proposed changes to the travel restrictions for TDY deployments abroad. Compl. ¶¶ 35-36, 66-69. However, even assuming arguendo that plaintiff could have made out a prima facie case at one time,⁴ her reasonable accommodation claim has become moot since the filing of her complaint. How so?

Where a defendant voluntarily ceases the allegedly illegal activity, dismissal is warranted so long as the "'behavior could not reasonably be expected to recur.'" *Id.* at

---

³ Plaintiff also contends that defendant violated the Rehabilitation Act through unlawful disability discrimination causing a disparate impact. *See* Compl. ¶¶ 61-65. However, to raise a disparate impact claim, plaintiff must challenge a facially-neutral employment practice that, in operation, disproportionately affects a protected class. *See Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971). Here, plaintiff has not identified a facially-neutral policy; indeed, under CENTCOM Mod 9, bipolar condition is a disqualifying condition for deployment. Therefore, plaintiff's claim for disparate impact (Count II) must be dismissed. Had plaintiff sufficiently alleged a claim for disparate impact, the claim would nonetheless be dismissed because plaintiff failed to exhaust her administrative remedies—she never raised the theory of disparate impact in her EEO proceeding. *See Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006) (holding that exhaustion of administrative remedies is a jurisdictional requirement under the Rehabilitation Act).

⁴ "To establish a prima facie case of discrimination under the Rehabilitation Act for failure to accommodate, a plaintiff must show (1) that [she] was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of [her] disability; (3) that with reasonable accommodation [she] could perform the essential functions of the position; and (4) that the employer refused to make such accommodations." *Howard v. Gutierrez*, 571 F. Supp. 2d 145, 157 (D.D.C. 2008); *Stewart v. St. Elizabeths Hosp.*, 589 F.3d 1305, 1307-08 (D.C. Cir. 2010).

8

189 (quoting *U.S. v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968). Specifically, where an alleged discriminatory policy has been replaced by a new one that seeks to rectify the errors of its predecessor, a challenge to the old policy becomes moot unless those errors can be reasonably expected to recur. *See Worth v. Jackson*, 451 F.3d 854, 860-61 (D.C. Cir. 2006). After all, a court should not retain jurisdiction over cases in which one or both parties lack a continuing interest in the outcome. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 192 (2000).

Here, the DIA abandoned CENTCOM Mod 9 on or about February 5, 2010, and future requests will be subject to DOD Instruction 6490.07—a policy that is not mandatory except for deployments lasting over thirty days, and eliminates the *per se* exclusions of its predecessor.[5] As such defendant has voluntarily ceased this allegedly illegal activity. Moreover, defendant contends that there is "no reason to believe the [old] policy will be misapplied to her again in the future." Def.'s Reply p. 14. Indeed, plaintiff's security clearance is predicated upon travel abroad for a limited duration—not beyond 30 days—and plaintiff concedes that she has never been deployed for more than thirty days. Pl.'s Opp'n at 11. As both parties concede, the DIA's single denial of a request to travel abroad by plaintiff for a period of less than thirty-days under CENTCOM Mod 9 was made in error. Compl. ¶ 26. Given that CENTCOM Mod 9 no longer exists and the new policy is highly unlikely to ever be applied to the plaintiff, the

---

[5] Additionally, this new policy substantially incorporates plaintiff's proposed changes: it takes into account a country's medical resources, bipolar disorder is no longer a *per se* exclusion, waivers and reasonable accommodation requests are individually assessed, and different types of deployment are categorized differently for the purposes of medical restrictions. Def.'s Mot. ¶¶ 13-14; Compl. ¶¶ 35-36.

allegedly discriminatory denial of travel cannot reasonably be expected to recur. Therefore, plaintiff's reasonable accommodation claim (Count III) is moot and must be dismissed.[6]

Thus, for the foregoing reasons, defendant's Motion to Dismiss is GRANTED. An appropriate order is herewith attached.

RICHARD J. LEON
United States District Judge

---

[6] Plaintiff further contends that the DIA's policy—CENTCOM Mod 9—was and is facially invalid (Count IV) and that even if the policy was facially valid, the DIA failed to implement the policy appropriately (Count VII). Compl. ¶¶ 71, 92. Plaintiff requests declaratory relief through the Declaratory Judgment Act. Compl. ¶ 78. This Court declines to exercise its discretion to provide declaratory relief for all the above reasons. See 28 U.S.C. § 2201(a) ("[A]ny court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration."); Nat'l Wildlife Federation V. United States, 626 F.2d 917, 923 (D.C. Cir. 1980) (The Act "makes clear the discretionary nature of the remedy."). Plaintiff additionally contends that defendant unlawfully used confidential medical information (Count V) and made an impermissible medical inquiry (Count VI). Compl. ¶¶ 81, 90. Plaintiff fails to allege how any confidential medical information was improperly used, and fails to cite any applicable statutory provision. A broad reading of the complaint suggests that plaintiff alleges that the DIA used confidential information to engage in an impermissible medical inquiry. However, agencies are permitted to "make inquiries into the ability of an employee to perform job-related functions." 42 U.S.C. § 12112(d)(4)(b). Here, the alleged medical inquiry clearly related to plaintiff's ability to perform a job-related function—deploying abroad. Therefore, Counts V and VI must also be dismissed. In any event, plaintiff has failed to exhaust her administrative remedies by not raising these challenges (Counts V and VI) in her EEO proceeding, and therefore this Court does not have jurisdiction over these claims. See Spinelli, 446 F.3d at 162.